## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

NOV - 5 2009

|  |  |
|---|---|
| XIAOPING YAO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   **Civil Action No. 1:08-cv-1181** |
| | ) |
| VISA, INC., et. al., | ) |
| | ) |
| Defendants. | ) |

### Memorandum Opinion

Inovant LLC ("Inovant"), a subsidiary of Visa, Inc.,[1] employed Xiaoping

Yao ("Yao"), who is of Chinese national origin, as a software engineer. Yao filed

an initial discrimination charge with the EEOC on November 20, 2006 while still

employed by Visa. Yao then filed an amended charge with the EEOC on April 6,

2007 after being terminated by Visa in March of 2007. The EEOC issued a

Dismissal and Notice of Rights on August 27, 2008. Yao then filed his Complaint

in the present action on November 12, 2008 and Visa filed its Answer on

February 19, 2009.

### I.  Background

The following facts are undisputed. Yao began working for Inovant in

August of 2005 in its McLean, Virginia office. Yao's direct supervisor was Mr.

Tracy Drummond, who managed Yao remotely from the company's San

Francisco office. In the Spring of 2006, Visa placed Yao on a project to write

---

[1] Defendant VISA, Inc. asserts that Plaintiff was actually an employee at all relevant times of Inovant LLC, which is a wholly-owned subsidiary of VISA USA, Inc. In turn, VISA USA, Inc. is a wholly-owned subsidiary of VISA, Inc. In 2006, VISA USA merged into VISA, Inc. as a part of an initial IPO restructuring before VISA decided to take some of its constituent companies public, but VISA USA remains a separately incorporated entity. For ease, Yao's employer will simply be referred to as "Visa" for the remainder of this memorandum opinion. The identity of the correct defendant to this action was the source of some dispute during oral argument on September 25, 2009. Defense subsequently counsel agreed to amend the pleadings to name all three entities as defendants.

source code for a program called "Listener" which was part of a larger project named "VIPER." In August of 2006, Yao was scheduled to travel to California for planned training on another of the subordinate VIPER programs named "NewScale." Yao failed to do so. Later, in September of 2006, Visa asked Yao to take classes to improve his English pronunciation, which he eventually took, but declined VISA's offer to pay for the classes and instead paid for them himself. Yao initially received a low performance rating in 2006, but Mr. Drummond subsequently upgraded that rating. Mr. Drummond, then changed the "performance review acknowledgement" procedure for the entire group in which Yao worked.

In November of 2006, Yao was reassigned from the "Listener" project to a project called "BMC Remedy." Yao's share of responsibility for the "Listener" project was transferred to another employee of Chinese national origin, Mr. Kin Yim. Shortly thereafter, Yao requested, and was granted, two weeks of leave. While on leave Yao filed his initial EEOC Charge on November 20, 2006. Yao missed work on January 21, 2007 without prior approval. In February 2007, Yao submitted an expense report which included a $42 "snack." Mr. Drummond changed the expense reimbursement policy and corporate card usage practices for Yao's group.

VISA attempted to place Yao on a "performance improvement plan," and Yao took two weeks of FMLA leave shortly after being presented with the plan. Visa terminated Yao's employment on March 29, 2007.

## II.    Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this cause of action arises under federal law. Venue is

proper in this case under 42 U.S.C.A. § 2000e-5(f)(3) as this Court sits in Virginia, the state in which the unlawful employment practice is alleged to have been committed.

**III.    Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law unless a fair-minded jury could return a verdict for the nonmoving party on the evidence presented. *Id.* at 247-48.

**IV.    Analysis**

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge or otherwise discriminate against an individual with respect to his...national origin." 42 U.S.C § 2000e- 2(a)(1). Yao, proceeding *pro se*, alleges that Visa took discriminatory action against him and ultimately terminated his employment because of his national origin and in retaliation for filing the November 2006 Charge with the EEOC. The Court has endeavored to parse out and give full consideration to Yao's many allegations. Having done so, the Court concludes that Yao's allegations are without merit.

3

a.   **Yao Fails to Establish a Prima Facie Case of Disparate Treatment Under Title VII.**

Yao alleges that Visa discriminated against him due to his national origin. Because Yao fails to present any direct evidence of discrimination, the well-established *McDonnell-Douglas* framework is applicable. 411 U.S. 792 (1973). The four *McDonnell-Douglas* factors of a disparate treatment claim are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff suffered an adverse employment action; (3) that at the time of the discrimination, the plaintiff was performing to his employer's expectations; and (4) that other similarly-situated employees who are not members of the protected class were treated differently. *Id.* Under this framework, Yao bears the initial burden of establishing a prima facie case of discrimination. If Yao successfully establishes the four factors, the burden shifts to Visa to offer legitimate, nondiscriminatory reasons for its actions. *Id.*  If Visa does so, the Yao must present evidence to prove that the defendant's expressed reasons were a pretext for unlawful discrimination. *Id.*

Yao is undoubtedly a member of a protected class, and thus the first of the four initial *McDonnell-Douglas* factors in establishing a *prima facie* case is met. However, Visa argues that the remaining three elements are not met here.

1.   **Adverse employment action.**

VISA argues that none of the actions alleged by Yao constitute "adverse employment actions" under the *McDonnell-Douglas* test.  Usually, "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" are the "typical requirements for a showing of an 'adverse employment action' that can support a Title VII claim." *Boone v. Goldin*, 178 F.3d 253, 255-256 (4th Cir. 1999).  This

4

Circuit has observed that "inquiries into adverse employment actions have consistently focused on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981). While the Supreme Court has indicated that the catalog of acts which would violate Title VII is more generous than such a finite list, *e.g., Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998), the Court has been equally clear that Title VII is not meant to address every slight or inconvenience in the workplace. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

Accordingly, the Court is persuaded that none of the following rise to the level of an "adverse employment action" as contemplated in the context of Title VII: asking Yao to take pronunciation classes; changing the "performance review acknowledgment procedure;" reassigning Yao from the "Listener" coding project to "BMC Remedy" project;[2] or receiving a lower initial performance rating which was subsequently raised.[3] Though Yao may have felt inconvenienced, put off, or otherwise offended by these actions, none present a negative impact on his employment with sufficient gravity to give rise to a violation of Title VII.

However, Yao's termination certainly suffices as an "adverse employment action" as contemplated by the Title VII framework. *See Boone*, 178 F.3d at 255. Likewise, Yao's termination likely suffices to meet the fourth *McDonnell-*

---

[2]   Though a reassignment, when coupled with a sufficiently marked decrease in quality of work conditions, may constitute an "adverse employment action," *see Boone*, 178 F.3d at 255, nothing in Yao's allegations legitimately indicates to the Court that the reassignment was anything other than VISA moving an employee from one project to another. The reassignment did not result in a decline in working conditions or a decrease in compensation for Yao. Thus, on the record before the Court, the reassignment did not qualify as an "adverse employment action."

[3]   Following the performance review, Yao was given a raise and a year-end bonus, so it is difficult to maintain that he suffered an "adverse action" as contemplated under Title VII.

*Douglas* factor, whether Yao was treated differently than similarly situated individuals outside his protected class, as other programmers outside Yao's protected class were not simultaneously terminated. Therefore, the Court focuses its attention on the remaining third factor of the *McDonnell- Douglas* frame work, whether Yao was performing to Visa's expectations at the time of the alleged discrimination.

2. <u>At the time of the alleged discrimination, Yao was not performing to his employer's expectations.</u>

Though Yao meets the second *McDonnell* factor by alleging a discriminatory termination, evidence in the record demonstrates that Yao's performance was deficient prior to his termination. Yao disputes that his performance was inadequate, but only by his own self-serving claims and speculations, which, standing alone, "cannot create a genuine issue of material fact." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). On the other hand, Visa offers a mass of evidence indicating Yao's shortcomings as an employee.

In his declaration, Tracy Drummond, a Senior Enterprise Architect at Visa and Yao's direct supervisor, chronicles the instances in which he was informed of other employees having difficulty understanding Yao, Yao's attendance problems, Yao's failure to attend mandatory training, and Yao's general insubordination. Drummond Decl. at ¶20- 28, 36, 37, 40, 45-48, 68. Further, the declaration of Karla Goldman, the Senior Business Leader of the Process Management team at Visa, attests to having told Mr. Drummond that she had difficulty understanding Yao when he spoke, that she had been informed by others in the workplace of similar difficulties, that Yao exhibited "performance issues" on the job, and that Yao rejected the suggested performance improvement plan. Goldman Decl. at ¶ 8-

16. Lastly, the declaration of Jim Torrise, a Senior Project Manager for Visa, states that there were "qualitative issues" with Yao's coding, that Yao was late in completing his portion of the "Listener" project and that the project was reassigned to another engineer. Torrise Decl. at ¶ 9-10.

Even straining to construe Yao's declarations, as a *pro se* plaintiff, in a beneficial light, Yao's on-the-job shortcomings are apparent from the record before the Court. The picture that emerges from the declarations of those who supervised and worked with Yao at Visa is one of an employee who failed to complete his work accurately and on time, was recalcitrant when asked to attend training and improve his communication skills, and rejected a suggested performance improvement plan. As such, the Court finds that the third *McDonnell-Douglas* factor is not met in this case, which is fatal to Yao's claim for disparate treatment under Title VII. For the sake of thoroughness, however, the Court also notes that Yao fails in overcoming his ultimate burden of showing pretext even if a *prima facie* case is present.

3. **Even if a prima facie case is established, VISA asserts legitimate, nondiscriminatory reasons for its actions and Yao cannot demonstrate that these actions are pretext for discrimination.**

Even if Yao presented a prima facie case of discrimination based on national origin, Visa offers legitimate, nondiscriminatory reasons for its actions. *McDonnell-Douglas*, 411 U.S. 792. It does so by pointing to: Yao's weak language skills; lack of and failure to get proper training; deficient and delayed work on the Listener program; and insubordination by refusing the performance improvement plan.

Given that Visa amply meets its burden to offer a nondiscriminatory grounds for its actions, Yao must show that these grounds are merely pretext for

discrimination. In explaining a Title VII plaintiff's burden of proof on the issue of pretext, the Supreme Court has recognized that:

> an employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak
> issue of fact as to whether the employer's reason was untrue and
> there was abundant and uncontroverted independent evidence that
> no discrimination had occurred.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

On this point, the applicable analysis under the second factor of the *McDonnell-Douglas* framework – whether Yao met Visa's expectations – is equally illustrative on this point. *See* § IV.A.2., *supra*. On repeated occasions, Yao had difficulty communicating with coworkers, performed deficiently in his programming, and was insubordinate when offered an opportunity to improve his performance by Visa. Perhaps most telling is that when Yao was transferred from the RICPM/VIPER "Listener" project, Visa reassigned the project to another employee of the same national origin, Kin Yim. Decl. of Kin Yim at ¶ 19. Thus, the Court finds Visa's explanations of the adverse actions to be legitimate and devoid of any discriminatory pretext.

ii.     **Yao Fails to Establish a Prima Facie Case of Retaliation Under Title VII**

Yao next alleges that he was subjected to retaliation for filing a discrimination charge with the EEOC in November 2006 when: (1) he was "counseled" to taking an unscheduled absence in January 2007; (2) Mr. Drummond changed the expense policy for his entire group; (3) he was placed on a performance improvement plan; and (4) he was terminated. In order to maintain

8

a claim under Title VII, Yao must also meet the *McDonnell-Douglas* burden-shifting framework to make out a *prima facie* case of retaliation.  To establish a *prima facie* claim, Yao must demonstrate that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253, 258 (4th Cir. 1998); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).  If Yao establishes these three factors, Visa then bears the burden of articulating a non-retaliatory reason for its adverse action. *Id.*  If Visa does so, the presumption raised by Yao's establishment of a *prima facie* case "drops from the case," such that Yao then bears the ultimate burden of proving he is the victim of retaliation.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

VISA concedes that Yao's filing of a complaint with the EEOC is a protected activity, but disputes that Yao established any of the remaining elements of a retaliation claim.

## 1.   Yao suffered an adverse employment action.

As the Supreme Court instructs, in order to establish an "adverse" retaliatory employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*,  548 U.S. 53, 68 (2006)(internal citations omitted). *See also Wells v. Gates*, 2009 WL 1991212, 3 (4th Cir. 2009).

The Court agrees with Visa that most of the actions alleged by Yao do not

9

qualify as an "adverse employment action" for the purposes of a Title VII retaliation claim. For instance, Visa's change in travel expense policy was not an adverse employment action. Likewise, Visa placing Yao on a performance improvement plan was not an adverse employment action. *See, e.g., Haynes v. Level 3 Commun., LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006); *Givens v. Cingular Wireless*, 396 F.3d 998, 998 (8th Cir. 2005); *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Again, whatever inconvenience Yao might have drawn from these actions, the focus under Title VII is one "of *material* adversity" because "it is important to separate significant from trivial harms." *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68 (internal citations omitted).

However, as Visa concedes, "counseling" Yao about his taking an unscheduled day off and terminating his employment constitute adverse employment actions. Nonetheless, Yao must still meet the third *McDonnell-Douglas* factor by demonstrating a causal connection between Yao's EEOC complaint and these adverse actions.

2.   **No causal connection exists between the protected activity and the adverse employment action.**

Yao argues that Visa "counseled" him and ultimately terminated him in retaliation for his filing of a charge before the EEOC in 2006. As noted above, Yao must demonstrate a nexus between these adverse acts and the protected activity, his filing of the EEOC charge.

Yao offers no causal tie between the "counseling" he received after missing work on January 19, 2007 and his 2006 EEOC. There was a two month gap between filing the charge and the "counseling." Sometimes, a "causal connection may be shown by evidence of circumstances that justify an inference

10

of retaliatory motive, such as protected conduct closely followed by adverse action." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

Visa cites *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003), cert den., 540 US 1073 (2003), for the proposition that a lapse of two months between a protected activity and an adverse employment action is "sufficiently long so as to weaken significantly the inference of causation." *Id.* In that case, however, the Fourth Circuit went on to say "[y]et, in the context of *this particular* employment situation, this length of time does not undercut the inference of causation enough to render [the plaintiff]'s prima facie claim unsuccessful." *Id.* (emphasis added).

Nevertheless, when this two month gap is coupled with other evidence, such as the declaration of Yao's supervisor, Tracy Drummond, that Yao had been counseled on a number of occasions throughout his employment regarding attendance issues, there is little on which this Court can infer a connection between the EEOC charge and the attendance counseling. Drummond Decl. ¶ 53. Rather, Visa's counseling of Yao after his unscheduled absence on January 19, 2007, nearly two months after filing his EEOC Charge simply does not suggest any retaliatory animus within the context of the evidence before the Court.

Yao also offers little in the way of a causal connection between the EEOC Charge and his termination. Yao seems to point to Visa's offer of a severance package in exchange for a release of claims, including his November 20, 2006 EEOC Charge, as indicative of a retaliatory motive behind his termination. The Court finds, however, that Visa's offer of a severance package in exchange for a release of claims does not suggest retaliatory intent and is wholly insufficient as a

11

basis upon which to infer a causal connection between the November EEOC charge and Yao's termination four months later. Rather, seeking a release of claims upon offering a severance package is more accurately viewed as standard business practice, offered for a multitude of good reasons, not the least of which is saving the cost of defending against potentially frivolous suits.

As such, Yao fails to make out a prima facie case of retaliation under Title VII. As this Circuit stresses "[w]orkers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of insubordination or poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir.2008). Here, there is a glaring lack of evidence of a causal connection between Yao's 2006 EEOC Charge and any adverse employment action. There is, however, ample evidence of Yao's insubordination and poor performance on the job.

3. **Even if any of Yao's allegations pass these three factors, VISA offers legitimate, nondiscriminatory reasons for its actions which Yao fails to rebut.**

Even if a causal tie is inferred for both the "counseling" due to Yao's absences and his termination, Visa ably meets its burden in offering non-retaliatory, non-pretextual reasons for the adverse actions against Yao.

Regarding the attendance "counseling," Visa's evidence indicates that Yao's attendance was an ongoing problem, addressed by his superiors for non-discriminatory motivations. *See Stukes v. Aetna Insulated Wire Co.*, 145 F.3d 1326 (Table 1998), WL 258379 at *1 (4th Cir. 1998); *Afande v. National Lutheran Home for the Aged*, 69 F.3d 532 (Table), 1995 WL 642835 at* 1 (4th Cir. 1995). As legitimate, non-discriminatory grounds for Yao's termination, Visa

12

offers his insubordination in rejecting the performance improvement plan on three occasions. In fact, Yao admits he repeatedly rejected the performance improvement plan. (Pl. Dep. at 133-34, 137, 141-44; Pl. Compl., ¶ 101). Rather, Yao argues with whether the improvement plan was warranted, an indication to the Court that Yao was indeed insubordinate and unwilling to abide by the suggestions of his superiors as to how he could improve his on-the-job performance. That he was potentially disrespectful in doing so only bolsters Visa's position that Yao was a difficult employee, not performing to expectations, and this, not retaliating against his filing of an EEOC Charge, was the motivating factor behind his termination. This deficiency and insubordination constitute legitimate, non-discriminatory reasons for Visa's adverse actions, and Yao fails to rebut them.

## V.     Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendant Visa's Motion for Summary Judgment is GRANTED. An appropriate order shall issue.

Alexandria, Virginia
November 5, 2009

/s/ ꙮꙮꙮ
Liam O'Grady
United States District Judge

13